No. 11,209.

MRS. ANN CHAPOTON VS. HER CREDITORS.

In a suit by the syndic of an insolvent estate to annul a mortgage granted three months before the judicial recognition and declaration of insolvency, it is essential to prove that the mortgage creditor, who, it is alleged, was preferred, had knowledge of the insolvent condition of the mortgagor.

Where a question of fact has been submitted to the lower court, the Supreme Court will not interfere with the judgment, unless a manifest injustice has been done.

APPEAL from the Fourteenth District Court, Parish of Iberville. Talbot, J.

Alex. Hebert and J. H. Rills for the Syndic, Appellant.

Ernest T. Florance contra.

The opinion of the court was delivered by

McENERY, J. This suit was brought by the syndic of the insolvent to annul and cancel a mortgage given by her to a creditor on her

property, more than three months before the insolvency was judicially recognized and declared.

It is therefore a revocatory action to be determined by Arts. 1983, 1984, 1985 of the Civil Code. Seixas vs. Citizens' Bank, 38 An. 427.

To entitle the syndic to a decree annulling the mortgage it is essential for him to prove knowledge of the insolvency on the part of the creditor obtaining the mortgage, and an advantage over the other creditors of the obligor. Civil Code, Art. 1984.

The estate of the insolvent is insufficient to satisfy her creditors, and the preference given to the mortgage creditor necessarily injures them and gives him an advantage over the other creditors.

The question then at issue is the knowledge of the mortgage creditor of the insolvency.

The insolvent was indebted to J. G. Spor in the sum of $2381. He had been doing business with her for several years, ever since she first started in commercial life.

On the 6th day of December, 1889, he sent his agent, Wilcox, to the insolvent's residence in the town of Plaquemine to demand payment of his debt.

Mr. Chapoton, the husband of the insolvent debtor, and her agent and manager, assured this agent that Mrs. Chapoton was perfectly solvent; that she had outstanding debts, which then had not been collected, but were good and could be collected in the course of the year; that if she were granted one year's time on this debt, Spor would lose nothing and she would be able to "pull through." Wilcox says he inquired among the merchants of the town as to the financial standing of Mrs. Chapoton, and ascertained that her credit was good. He had no suspicion of her insolvency.

She, through her husband, proposed to secure the debt by mortgage in order to obtain the required time. Neither he nor his principal asked for the mortgage, or even suggested it.

Had he entertained any suspicion of the insolvent condition of Mrs. Chapoton he would have instituted suit immediately against her in order to obtain judgment at the ensuing January term of court.

He returned to New Orleans and reported these facts to his principal, Spor, and some two weeks thereafter, on the 19th of December, 1889, the mortgage was executed.

The business manager, the husband of Mrs. Chapoton, says at this

time she was only embarrassed on account of failure to make collections, but her assets exceeded her liabilities. These facts were communicated to the agent, Wilcox. He says, "from statements made to me by herself and husband, and investigation regarding her financial standing in the city were of such a character that I believed she was able to pay her debts. The information I possessed and my belief was communicated to Mr. Spor, who approved of my action."

Spor denies all knowledge of the insolvency of Mrs. Chapoton. He had great confidence in her, entrusted his claim to Wilcox and only knew what he reported to him. That he had this confidence in her is shown by his failure to profit by the advice of Wilbert, the present syndic, who told him three months before the act of mortgage was executed he ought to secure his debt by mortgage, as Mrs. Chapoton owed some claims in the West for flour, etc. There is no evidence in the record of the existence of these debts, or that they had been communicated to Spor to fasten upon him knowledge of the insolvency. He evidently did not believe in their existence, or that Mrs. Chapoton was in failing circumstances.

In three months and six days after the granting of the mortgage Mrs. Chapoton made an assignment for the benefit of her creditors. It is urged that the delay in the assignment was to avoid the effect of Section 1808, Revised Statutes, which declares null and void the mortgage which gives an unjust preference to a creditor within three months next preceding the act of insolvency.

Wilcox & Spor deny that they had any knowledge of the intention of Mrs. Chapoton to take the benefit of the insolvent laws. Chapoton denies that any agreement was made with them to stave off the assignment in order to save the mortgage granted to Spor.

One witness testifies that "Mr. J. G. Spor knew the fact that unless a settlement was effected with the creditors that an insolvent proceeding would be the result as soon as the ninety days expired from the granting of his mortgage. I do not make this statement from hearsay. This matter was discussed in the office of Wilcox & Picton, between Mr. Spor, Mr. Chapoton and myself." He states on cross-examination: "I acquainted Mr. Spor with the fact that unless Mrs. Chapoton could effect a settlement with the creditors that she would go into insolvency as soon as the ninety days would expire, and this was the reason, was one of the reasons upon which Mr. Spor agreed to loan the money to effect the compromise."

During the time between the execution of the mortgage and the judicial declaration of insolvency, this witness was the agent of Mrs. Chapoton, to borrow money in order to effect a compromise with her creditors. Spor denies that he proposed or agreed to furnish her any money for this purpose. We are inclined to believe that there was no agreement with Spor to postpone insolvent proceedings in order to protect his mortgage. The above conversation at the office of Wilcox & Picton was, if had at all, to influence Spor to advance the money; to impress him with the fact that if the judicial declaration of insolvency was made within three months from the execution of the mortgage it would be null and void. This view is strengthened by the testimony of Mr. Chapoton, who says that Mr. Wilcox and Mr. Spor refused to advance the money for an adjustment with the creditors, and that the witness, Mr. Lozano, "told us that if my wife went into insolvency before Spor's mortgage was ninety days old that it would not be worth anything. It was understood between Mr. Lozano and myself as the agent of my wife that we would wait until the ninety days had expired before going into insolvency, and all that was to make the Spor mortgage good." This was evidently the argument agreed upon to inflence Spor.

We think the preponderance of testimony and all the circumstances in the case show that Spor had no knowledge of the insolvent condition of Mrs. Chapoton before and at the time of the execution of the mortgage. The testimony is to a great extent conflicting. The question of Spor's knowledge of the insolvent condition of Mrs. Chapoton was a fact submitted to the district judge. Under such circumstances we are not disposed to disturb the judgment appealed from unless manifest injustice has been done. Gilkeson-Sloss Commission Company vs. Bond & Williams, 44 An. 841; Payne vs. James & Trager, 45 An.

Judgment affirmed.